UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ORIGIN CONSULTING, LLC, a Nevada limited liability company; and ORIGIN HOLDINGS, INC., a NEVADA corporation;<br><br>Plaintiff,<br><br>v.<br><br>CRITICALRIVER, INC. a Delaware corporation; and DOES I through X; and ROES I through X,<br><br>Defendants. | Case No. 2:19-cv-01997-KJD-EJY<br><br>**ORDER** |

Presently before the Court is Defendant CriticalRiver, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") for Lack of Jurisdiction, Improper Venue and Failure to State a Claim (docketed at ECF No. 6, 18). Plaintiffs Origin Consulting, LLC and Origin Holdings, Inc. (collectively "Origin") responded (ECF No. 22), and CriticalRiver replied (ECF No. 23). The Court finds that Origin has failed to state facts sufficient to demonstrate that the Court has personal jurisdiction over CriticalRiver. Accordingly, the Court GRANTS CriticalRiver's Motion to Dismiss (ECF No. 18).

**I.      Background**

In this matter, Origin alleges that CriticalRiver breached two agreements—a Mutual Non-Disclosure Agreement (the "NDA") and a Master Subcontractor Agreement (the "MSA") (collectively the "Agreements")—by soliciting Origin's contractor. See FAC 3–5, ECF No. 9.[1] CriticalRiver is an information technology company for comprehensive Oracle and Salesforce consulting, implementations, and managed services that outsources technical experts on IT

---

[1] The Court draws the following factual allegations from the FAC and accepts them as true for purposes of the defendant's motion to dismiss. Doe v. Unocal Corp., 248 F.3d 915, 922 (2001).

projects for implementation of enterprise software. Def.'s Mot. to Dismiss 3, ECF No. 18. CriticalRiver is a Delaware corporation with a principal place of business in California. Id.; FAC ¶ 3. Origin is a company that contracts with companies for IT services like the services provided by CriticalRiver under the Agreements discussed below. Def.'s Mot. to Dismiss at 3. Origin is a Nevada corporation with a principal place of business in Nevada. FAC ¶¶ 1–2.

On October 12, 2018, Origin and CriticalRiver entered into an NDA that, among other things, prevented the parties from recruiting or encouraging their employees to accept outside employment. FAC ¶¶ 8–9. On October 15, Origin and CriticalRiver entered into an Master-Subcontractor Agreement ("MSA") for consulting services rendered by CriticalRiver. Id. ¶ 10. The MSA contained a non-solicitation provision, which, like the NDA, protected each entity's employees from being solicited by the other. Id. ¶ 11. The Agreements were drafted and executed in Clark County, Nevada, and provided for the application of Nevada law without regard to a choice of law provision. Id. ¶¶ 12–13. Though the parties seem to have bargained for a Nevada choice-of-law clause, neither agreement included a forum-selection clause.

The Agreements involved a project with Origin's client, the Washington Suburban Sanitary Commission ("WSSC"). Id. ¶ 14. Because the parties directed work to the WSSC, the employees and contractors retained under the Agreements did not perform work in either California or Nevada. Id. ¶ 15. Instead, the employees and contractors performed the work in WSSC offices in Maryland. Id. ¶ 16.

On June 3, 2019, Origin entered into a Consulting Service Agreement (the "CSA") with CIS Quality Assurance, Inc. ("CIS") for services rendered by CIS. Id. ¶ 17. The CSA provided for the application of Nevada law and personal jurisdiction in Clark County. Id. ¶ 18. The principal of CIS was Marlan Roth ("Roth"). Id. ¶ 19. In August of 2019, CriticalRiver and Roth negotiated for Roth and/or CIS to work for CriticalRiver. Id. ¶ 20. On August 16, Roth terminated the CSA effective August 30. Id. ¶ 21.

In October of 2019, CriticalRiver approached Origin's client, the WSSC, regarding developing future business in violation of the Agreements. Id. ¶ 22. Origin then terminated the MSA on October 10. Id. ¶ 23.

CriticalRiver filed a declaratory relief action in California Superior Court in September 2019 seeking a determination that the Agreements' non-solicitation clauses were unenforceable. See Def.'s Mot. to Dismiss at 2–3. In response, Origin filed a motion to quash service of the summons and dismiss for lack of personal jurisdiction. Pl.'s Resp. 3, ECF No. 22. From what the Court can gather, that state action is still pending. Id.

Thereafter, Origin filed its federal Complaint on November 15, 2019. See Compl., ECF No. 1. Origin then amended its Complaint on January 29, 2020. See FAC. The FAC asserted claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) declaratory relief, and (4) intentional interference with contractual relations. See id. at 3–5. CriticalRiver now moves to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim under Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6). See Def.'s Mot. to Dismiss at 2.

## II.     Legal Standard

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where, as here, a defendant raises the defense, the burden then falls on the plaintiff to prove sufficient facts to establish that jurisdiction is proper. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff can carry this burden only by presenting sufficient evidence to establish that (1) personal jurisdiction is proper under the laws of the state where it is asserted; and (2) the exercise of jurisdiction does not violate the defendant's right to due process. Ziegler v. Indian River Cnty., 64 F.3d 470, 473 (9th Cir. 1995); Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404–05 (9th Cir. 1994).

The court first looks to federal statutes to determine whether personal jurisdiction exists. See Gator.com Corp. v. L.L. Bean, Inc., 314 F.3d 1072, 1076 (9th Cir. 2003). Absent a federal statute, the court must determine (1) whether the state's long-arm statute has been satisfied and (2) whether the exercise of personal jurisdiction offends the notions of due process. Trump v. Eighth Judicial Dist. Court, 857 P.2d 740, 747 (Nev. 1993). Nevada's long arm statute authorizes personal jurisdiction so long as such jurisdiction is "not inconsistent with the Constitution." See

Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 415 (9th Cir. 1977); N.R.S. § 14.065.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make "a prima facie showing of jurisdictional facts." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). When analyzing a motion to dismiss for lack of personal jurisdiction, the court must resolve all disputed facts in the plaintiff's favor. Pebble Beach, 453 F.3d at 1154.

Personal jurisdiction is appropriate when the defendant has "certain minimum contacts with [a state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" Core–Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting Int'l Shoe Co. v.Washington, 326 U.S. 310, 316 (1945)). Moreover, the contacts must arise out of relationships that the "defendant himself" created with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). These requirements "give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The strength of the defendant's contacts with the forum determine whether that defendant is subject to general or specific jurisdiction. Boschetto, 529 F.3d at 1016. General personal jurisdiction exists where there are "substantial" or "continuous and systematic" contacts with the forum state such that jurisdiction would be appropriate regardless of whether the defendant's conduct occurred in the forum. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Specific personal jurisdiction, on the other hand, is appropriate where "the case arises out of certain forum-related acts." Id. The touchstone of personal jurisdiction is "purposeful availment of the forum, which ensures that defendants are not "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002) (citing Burger King, 471 U.S. 462 at 475).

**III.     Analysis**

As previously stated, CriticalRiver's motion seeks dismissal of this action on the following grounds: (a) lack of personal jurisdiction; (b) improper venue; and (c) failure to state a claim upon which relief can be granted. See Def.'s Mot. to Dismiss at 2. Because the first ground is dispositive of this matter, the Court need not reach CriticalRiver's remaining arguments.

As plaintiff, Origin bears the burden of demonstrating that the court has personal jurisdiction over CriticalRiver. See Boschetto, 539 F.3d at 1015. The Court looks to the allegations of the complaint and any supporting filings or affidavits to determine whether personal jurisdiction exists. Americopters, LLC v. Fed. Aviation Admin., 441 F.3d 726, 732 n.4 (9th Cir. 2006).

**A.  CriticalRiver's Contacts with Nevada**

First, the court turns to whether CriticalRiver has sufficient contacts with Nevada for the court to exercise personal jurisdiction over it. The FAC alleges that "this Court has personal jurisdiction over Defendants," but fails to explain why. FAC ¶ 6. The sole fact relevant to personal jurisdiction in the body of the FAC is Origin's allegation that "[t]he MSA and the NDA were drafted and executed in Clark County, Nevada." FAC ¶ 12. CriticalRiver disputes this statement and claims the events "occurred in California, including signing the operative contracts and the performance of the work under those contracts." Def.'s Mot. to Dismiss at 2. However, the court must take the plaintiff's version of the facts as true for purposes of deciding a motion to dismiss for lack of personal jurisdiction. Pebble Beach, 453 F.3d at 1154. In any event, Origin does not refute that the work performed under the Agreements was performed in Maryland. FAC ¶¶ 14 and 16.

CriticalRiver argues the Court lacks general personal jurisdiction because it does not have systematic and wide-ranging contacts with Nevada. Def.'s Mot. to Dismiss at 7. To support its argument, CriticalRiver asserts that it is registered in Delaware and California with a principal place of business in California. Id. Additionally, CriticalRiver asserts that it does not do business

in Nevada or have any customers or employees there. Id.[2] Origin does not refute that CriticalRiver is a Delaware corporation with a principal place of business in California. FAC ¶ 3.

Given that the parties performed the Agreements in Maryland or California and CriticalRiver's principal place of business is California, CriticalRiver's contacts with Nevada are not so continuous and systematic to support general personal jurisdiction. The question then, is whether CriticalRiver purposefully availed itself of the laws and benefits of Nevada through its contacts with Nevada.

The court applies a three-part test to determine whether a defendant's contacts with the forum are sufficient to confer personal jurisdiction:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proving the first two prongs of the test. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff succeeds, the burden shifts to the defendant to make a "compelling case" that jurisdiction would be unreasonable. Id.

>    a. *Purposeful Availment and Purposeful Direction*

Although purposeful availment and purposeful direction are often conflated, they are two distinct concepts. Pebble Beach 453 F.3d at 1155. Whether the court analyzes purposeful direction or availment depends upon the plaintiff's claim; purposeful availment is for contract claims while purposeful direction is for tort claims. Id.; Schwarzenegger, 374 F.3d at 802. When the plaintiff brings both contract and tort claims, the plaintiff must only demonstrate personal jurisdiction on one claim, however, because the court may exercise pendent jurisdiction over the

---

[2] Origin alleges that CriticalRiver advertises its "services across the globe". Pl.'s Resp. at 4. However, the Court does not find this allegation to suffice as evidence that CriticalRiver does business in Nevada.

additional claims so long as they arise out of a common nucleus of operative fact. See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004). Here, Origin's claims are contract claims because they arise out of an alleged breach of the Agreement between the parties. Accordingly, the court will have jurisdiction if CriticalRiver purposefully availed himself of Nevada.

A defendant avails itself of the forum when it exercises the privilege of conducting its business activities in the forum state. Hanson v. Denckla, 357 U.S. 235, 253 (1958). By so doing, the defendant takes advantage of benefits of the state and enjoys the protection of its laws. Id. A contract between a defendant and a resident of the forum—without more—is insufficient to confer personal jurisdiction. Boschetto, 539 F.3d at 1017. But participating in contract negotiations in the forum can constitute purposeful availment of a forum. See Data Disk, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287-88 (9th Cir. 1977) ("By participating in the contract negotiations in [the forum, the defendant] purposefully availed itself of the privilege of carrying out activities in that state.").

In Boschetto, Plaintiff (Boschetto) resided in California and Defendant (Hansing) lived in Wisconsin. 539 F.3d at 1015. The parties negotiated a contract via email to purchase a car. Id. Plaintiff filed a complaint in the northern district of California alleging, among other claims, breach of contract, and Defendant filed a motion to dismiss based on lack of personal jurisdiction. Id. The Court granted the motion to dismiss, holding the contract alone did not establish that the Defendant purposefully availed himself of the privilege of doing business in California. Id. The Ninth Circuit affirmed, holding that the contract on its own did not create any ongoing obligations with the Plaintiff in California. Id. Moreover, the appellate court held, "This was, as the district court observed, a 'one-shot affair.'" See CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir.1996).

Here, Origin contends that personal jurisdiction exists because "CriticalRiver derived revenue from services rendered to a Nevada business . . . , negotiated contracts with a Nevada business over email, and entered into a contract with a Nevada business, which it then breached, causing harm to a Nevada business." Pl.'s Resp. at 8.

However, a contract does not establish that a party purposefully availed himself of the privilege of doing business in the forum state. See Boschetto, 539 F.3d at 1015. Similar to Boschetto, where the parties negotiated a contract via email, CriticalRiver and Origin negotiated a contract via email in this case. Id. As in Boschetto, the contract here is insufficient to confer personal jurisdiction. Additionally, the contract did not create "any ongoing obligations" with Origin in Nevada. See id. Moreover, the allegation that CriticalRiver negotiated contracts *over email* does not constitute purposeful availment of a forum. See Data Disk, 557 F.2d at 1287–88.

Origin points to no federal authority for the proposition that any of CriticalRiver's alleged contacts suffices to confer personal jurisdiction over an out-of-state defendant. Instead, Origin asserts (without explanation) that these alleged contacts are similar to those found to be sufficient for personal jurisdiction in a Nevada case, Trump v. Eighth Judicial Dist. Ct., 109 Nev. 687 (1993). In Trump, the defendant (Trump) negotiated and executed an employment contract in Nevada that created a Nevada trust. Id. at 702. The Nevada Supreme Court found personal jurisdiction appropriate because Trump's creation of the trust—an ongoing Nevada concern—was the most significant fact in its analysis. Id. (emphasis added). Meaning, Trump's creation of a Nevada trust that remained in Nevada was the most significant factor. Id. In addition to the trust, Trump wired almost one million dollars to Nevada, which supported personal jurisdiction here. With all of that contact, Trump should have expected he could be sued in Nevada.

The essence of Origin's argument appears to be that CriticalRiver is subject to personal jurisdiction in Nevada simply because it entered into a contract across state lines with a Nevada entity. See Pl.'s Resp. 8–9. Even if it could be said that the parties executed the Agreements in Nevada, however, the Agreements did not create an ongoing concern in Nevada, such as a trust or business entity, or otherwise establish an ongoing presence for CriticalRiver in Nevada. Trump, therefore, provides only weak support for Origin's position. It does not support the proposition that a single contract between a foreign entity and a Nevada entity is sufficient to subject the foreign entity to personal jurisdiction in Nevada. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with

an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); Doe v. Unocal Corp., 248 F.3d 915, 924, overruled on other grounds by Daimler AG v. Bauman, 571 U.S. 117 (2014) ("[A]n individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts to support personal jurisdiction.") (quotation marks and alterations omitted). In short, Trump does not mandate personal jurisdiction here.

Finally, as the Ninth Circuit held in Sinatra v. National Enquirer, "in order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." 854 F.2d 1191, 1195 (9th Cir. 1988). Again, CriticalRiver's lone contact with the state of Nevada is the contract with Origin. It has no other contacts here, no corporate registrations, no business presence, no employees, no contractors, no customers, and no property. Having executed a contract in Nevada for work in Maryland, CriticalRiver is not directing its activities to the forum state.

                *b.   Forum Related Activities*

The second prong of the test is whether plaintiff's claim arises out of activity conducted in the forum state. Schwarzenegger, 374 F.3d at 802. The mere existence of a contract between the defendant and a resident of the forum state is not enough. Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991). Rather, the court examines the "continuing relationships and obligations with citizens of the [forum]." Burger King, 471 U.S. at 473. The court also considers the circumstances surrounding formation of the contract including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479.

CriticalRiver asserts that it is registered in Delaware and California with a principal place of business in California. Def.'s Mot. to Dismiss at 7. Additionally, CriticalRiver asserts that it does not do business in Nevada or have any customers or employees there. Id. Origin does not refute that CriticalRiver is a Delaware corporation with a principal place of business in California. FAC ¶ 3. Moreover, Origin does not refute that the work performed under the

Agreements was performed in Maryland. FAC ¶¶ 14 and 16. Accordingly, Origin's claims do not arise out of CriticalRiver's activities in Nevada.

### c. Reasonableness

The final prong of the analysis shifts the burden to CriticalRiver to present a "compelling case" that jurisdiction in Nevada would be unreasonable. Schwarzenegger, 374 F.3d at 802. This is a high bar because there is a "presumption of reasonableness" once a plaintiff has satisfied the first two elements of the test. See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). The court looks to seven factors to determine whether personal jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into the affairs of the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004). Because the factors overwhelmingly favor CriticalRiver, jurisdiction is not reasonable.

### B. Jurisdictional Discovery

The Court finds that the request for jurisdictional discovery, even if granted, would not affect the Court's analysis. In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986)).  Similar to this case, it is appropriate to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," Am. W. Airlines, Inc. v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989) (quoting Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Given that the parties performed the Agreements in Maryland or California and CriticalRiver's principal place of business is California, CriticalRiver does not have sufficient contacts with Nevada for the court to exercise personal jurisdiction over it. Additionally, CriticalRiver did not purposefully avail itself of the laws and benefits of Nevada through its contacts with Nevada. As previously discussed, CriticalRiver did not exercise the privilege of conducting its business activities in Nevada, Origin's claim arises out of activity conducted in Maryland, and jurisdiction in Nevada would be unreasonable. Thus, an extension to conduct jurisdictional discovery is unnecessary and Origin's request is therefore denied.

### IV.     Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant, CriticalRiver, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 6, 18) is **GRANTED**.

Dated this 10th day of August, 2020.

Kent J. Dawson
United States District Judge